UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CAROLLYN GARVEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> STEVEN GRIMM, an individual; MELISSA ) <br> BEECROFT, an individual; KATHLEEN ) <br> TINAGLIA, an individual; EVE ) <br> MAZZARELLA, an individual; BARBARA ) <br> BURNS, an individual; SECURED ) <br> MORTGAGE SERVICES, LLC, a Nevada ) <br> corporation; SILVER STATE FINANCIAL ) <br> SERVICES, INC., d/b/a SILVER STATE ) <br> MORTGAGE, a Nevada corporation; ) <br> DISTINCTIVE REAL ESTATE & ) <br> INVESTMENTS, INC., a Nevada corporation; ) <br> COUNTRYWIDE HOME LOANS ) <br> SERVICING LP, a foreign corporation; ) <br> NATIONAL DEFAULT SERVICING ) <br> COMPANY, a foreign corporation; PRO ) <br> DESIGN, INC., a Nevada corporation; DOE ) <br> individuals 1 through 50; ROE ENTITIES 51 ) <br> through 100; DOE APPRAISERS 1-5; ROE ) <br> APPRAISERS ENTITIES 1-5; ROE REAL ) <br> CORPORATIONS 6-50, inclusive, ) <br> ) <br> Defendants. ) | Case No.: 2:10-cv-633-RLH-PAL <br><br> **O R D E R** <br><br> (Motion for Remand–#10) |

Before the Court is Plaintiff Carollyn Garvey's **Motion for Remand** (#10), filed May 17, 2010. The Court has also considered Defendant Countywide Home Loan Servicing's Opposition (#13), filed June 3, 2010, and Garvey's Reply (#15), filed June 14, 2010.

1

AO 72
(Rev. 8/82)

**BACKGROUND**

In September 2006, Garvey and Defendant Steven Grimm apparently entered into an agreement whereby Grimm would purchase the residential property located at 322 Redondo Street in Henderson, Nevada on behalf of Garvey. According to Garvey, Grimm agreed to purchase the property on Garvey's behalf, rent the property to a third party, collect the rent, pay the mortgage, and then forward the surplus money to Garvey.

Although Garvey alleges she entered into an initial agreement with only Grimm, she claims Grimm used her credit and identification to obtain a mortgage on the property in conjunction with Defendants Mazzarella, Tinaglia, Beecroft, Secured Mortgage, Pro Design, and Distinctive Real Estate and Investments. These Defendants apparently purchased the property together (on Garvey's behalf) and obtained a subprime mortgage loan.

Garvey alleges in her Complaint that Defendants "should have presented different financial option to [her], and not placed her into a subprime loan." (Dkt. #1, Compl. ¶ 34.) She further alleges Defendants sought for and obtained a loan that favored themselves, rather than her. (*Id.* ¶ 37.) Garvey also alleges Defendants intentionally falsified certain loan documents and submitted other loan documents to the lenders that they "knew or reasonably should have known . . . [were] false." (*Id.* ¶ 38.) In addition to the purchasers, Garvey also brings a claim against the mortgage lenders—Silver State, Countrywide, and National Default Services (collectively "the lenders")—claiming that they "should have known that the [mortgage] documents were fraudulently submitted" by the other Defendants. According to Garvey, the lenders also "knew or should have known that [she] lacked the knowledge of and experience" necessary to enter into a mortgage contract. (*Id.* at ¶ 47.)

It appears that Defendants (or Garvey) made mortgage payments for a few months before defaulting on the loan. On September 7, 2007, Defendant National Default Servicing Company filed a Notice of Default with the Clark County Recorder's Office. On December 5,

/

AO 72
(Rev. 8/82)

National Default filed a Notice of Trustee Sale with the Clark County Recorder's Office, and on January 7, 2008, it sold the property at auction.

Garvey alleges she never received notice that the property was in default or that it would be sold at auction. According to Garvey, she filed suit as soon as she found out that the property had been sold. On August 24, 2009, Garvey filed suit in Nevada state court alleging claims for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violation of NRS 598D.010; (4) violation of NRS 41.600; (5) fraud; (6) constructive fraud; (7) negligence per se; (8) negligence; (9) tortious interference with contractual relationship; (10) civil conspiracy; (11) intentional infliction of emotional distress; (12) negligent misrepresentation; and (13) punitive damages. On May 3, 2010, Countrywide Home Loans removed the case to this Court on the basis of federal subject matter jurisdiction. Garvey now moves to remand this case to state court. For the reasons discussed below, the Court grants Garvey's motion.

## DISCUSSION

### I. Federal Question Jurisdiction

Federal courts can have federal question jurisdiction even when a plaintiff does not expressly invoke federal law or bring a claim under a federal statute. When a state law claim depends on the resolution of substantial questions of federal law, federal jurisdiction exists. *Grable & Sons Metal Prod. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005) (holding that "federal question jurisdiction will lie over state-law claims that implicate significant federal issues."). Courts have arrived at a consensus on this issue because of the "common sense notion that federal court[s] ought to be able to hear claims recognized under state law that, nonetheless, turn on substantial questions of federal law." *Id.*

### II. Analysis

Countrywide claims this Court has federal question jurisdiction over this case because it must interpret the federal Truth in Lending Act, 15 U.S.C. § 1601 ("TILA") and the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2602 ("RESPA") in order to analyze

AO 72
(Rev. 8/82)

1   Garvey's state law claims. Under TILA and RESPA, lenders must disclose to borrowers specific
2   information regarding the terms of the loan and the applicable transaction costs before finalizing
3   the loan agreement.

4         The Court disagrees with Countrywide and concludes that it does not have
5   jurisdiction over this case. All thirteen of Garvey's claims stem from at least one of the following
6   factual assertions: (1) that Defendants should have presented different financial options to her; (2)
7   that Defendants intentionally falsified loan documents; and (3) that Defendants should have known
8   she lacked the knowledge and experience to obtain a mortgage loan. (Dkt. #1, Compl. ¶¶ 34, 37,
9   38, 47). In the Court's view, a determination regarding the merits of these factual assertions does
10  not require the Court to interpret either TILA or RESPA. This is because Garvey does not allege
11  that Defendants failed to disclose information regarding her loan or the cost of the transaction;
12  instead, she claims Defendants violated Nevada common and statutory law when they falsified
13  documents and took advantage of her inexperience and lack of expertise. Because none of these
14  assertions relate to contents of the required TILA and RESPA disclosure documents, the Court
15  will not need to analyze TILA or RESPA in order to determine whether Garvey's claims have
16  merit. Thus, the Court finds that Garvey's claims turn solely on Nevada state law and that it lacks
17  federal subject matter jurisdiction.

## CONCLUSION

19        Accordingly, and for good cause appearing,

20        IT IS HEREBY ORDERED that Plaintiff Carollyn Garvey's Motion for Remand
21  (#10) is GRANTED. This case is remanded to Nevada state court.

22        Dated: August 11, 2010.

                                                      _____
                                                      ROGER L. HUNT
                                                      Chief United States District Judge

AO 72
(Rev. 8/82)